(July 29, 1910.)

## WILLIAM E. WILSON et al., Appellants, v. ANTHONY D. LINDER et al., Respondents.

[110 Pac. 274.]

ACTION TO DETERMINE ADVERSE CLAIM—"RULE IN SHELLEY'S CASE"—CONSTRUCTION OF WILL—LIFE ESTATE—CONTINGENT REMAINDER.

(Syllabus by the court.)

1. Under the provisions of sec. 4538 of the Rev. Codes, an action may be maintained by a remainderman for the protection of a contingent remainder as against one who claims an estate or interest in the property adverse to such remainderman.

2. Under the provisions of sec. 3076 of the Rev. Codes, the common-law rule, generally known as the "Rule in Shelley's Case," has been abrogated, and the term "heirs" has been changed from a word of limitation to one of purchase.

3. The cardinal rule to be applied in the construction of a will is to gather the intent of the testator from the language he has employed in the will, and this intent is to be ascertained from a full view of everything within the "four corners of the instrument." This rule must be understood and applied in connection with that other rule to the effect that a clearly expressed intention in one portion of the will is not to yield to a doubtful construction in another portion of the instrument.

4. Where a testator provided by a will as follows: "My son Jesse shall have the home place. [Here follows a description of the property.] . . . . But should my son Jesse die without any wife

or children, the property herein conveyed to him shall be equally divided between my other four children, or their heirs, share and share alike"—*held,* that the devisee, Jesse Wilson, took a limited estate only, subject to the vesting of an absolute and fee simple title on his leaving surviving him at the time of his death a wife or child, and that the remaindermen had only an expectancy which might be vested in them as an absolute estate upon the contingency of Jesse Wilson dying without either wife or child.

5. Where a contingency named in a will upon which an absolute estate may vest in one devisee as against another is unlimited as to time and is such a contingency as may never occur either prior or subsequent to the death of the testator, and may also occur at any time, the contingency should not be limited by construction to the period prior to the death of the testator so as to exclude therefrom the possibility of that contingency happening during the period subsequent to the death of the testator and prior to the death of the devisee.

APPEAL from the District Court of the Third Judicial District, for the County of Ada. Hon. Fremont Wood, Judge.

Action by plaintiffs to determine the respective interests of several parties to real estate. Judgment for defendant. Plaintiffs appeal. *Reversed.*

Cavanah & Blake, and E. J. Dockery, for Appellants.

The provisions of sec. 4538, Rev. Codes, are very broad, and authorize any person, whether in possession or out of possession, whether holding the legal title or equitable title, to bring his action against another who claims an estate in real property adverse to him, and he may in such action have the adverse claim determined and settled. (*Coleman v. Jaggers,* 12 Ida. 125, 118 Am. St. 207, 85 Pac. 894; *German-Am. Savings Bank v. Gollmer,* 155 Cal. 683, 102 Pac. 932, 24 L. R. A., N. S., 1066.)

The rule in Shelley's Case has been abrogated by sec. 3076, Rev. Codes, which is identical with sec. 779, Civil Code of Cal. (*Barnett v. Barnett,* 104 Cal. 298, 37 Pac. 1049; *Whiting v. Whiting,* 42 Minn. 548, 44 N. W. 1030.)

Even in states where the rule in Shelley's Case still obtains it has been held that words of similar import to that contained in the will in the case at bar convey to the first taker only a life estate. (*Nes v. Ramsay,* 155 Pa. 628, 26 Atl. 770; *Taylor v. Taylor,* 63 Pa. 481, 3 Am. Rep. 565; *Peirce v. Hubbard,* 152 Pa. 18, 25 Atl. 231. See, also, *Golladay v. Knock,* 235 Ill. 412, 126 Am. St. 224, 85 N. E. 649; *Cousino v. Cousino,* 86 Mich. 323, 48 N. W. 1084; *Dunn v. Sargent,* 101 Mass. 336.)

The only possible persons who could be injured by the petitioner's not giving a bond would be the executor and the creditors of the estate. The facts show that the creditors could not possibly be injured, and this being true, of course the executor could not be injured.

"The question whether a bond should be given by any of the parties to a partial distribution is one entirely within the discretion of the court below." (*In re Levinson's Estate,* 98 Cal. 654, 33 Pac. 726.)

Ira E. Barber, for Respondents.

The will in this case devised an absolute estate to Jesse Wilson. "Shall have" passes the absolute interest of the testator. (*Fairclaim v. Guthrie,* 1 Call (Va.), 7; *Chapman v. Turner,* 1 Call (Va.), 280, 1 Am. Dec. 514.)

Having vested an absolute estate, in order to limit it or diminish it requires words as certain and unequivocal as those used in vesting the estate, and the words, "die without wife or children" as used in this will referred to a death of devisee during the lifetime of the testator. (*Reeves v. School Dist.,* 24 Wash. 282, 64 Pac. 752, and cases cited; *Howard v. Carusi,* 109 U. S. 725, 3 Sup. Ct. 585, 27 L. ed. 1089; *Mc-Clellan v. MacKenzie,* 126 Fed. 701, 61 C. C. A. 619; *Carpenter v. Hazelrigg,* 103 Ky. 538, 45 S. W. 666; *Eberts v. Eberts,* 42 Mich. 404, 4 N. W. 172; *Prendergast v. Walsh,* 58 N. J. Eq. 149, 42 Atl. 1049; *In re Herrick's Estate,* 12 N. Y. Supp. 105; *Davis v. Davis,* 118 N. Y. 411, 23 N. E. 568; *Bailey v. Ross,* 66 Ga. 354; *Kelly v. Meins,* 135 Mass. 231;

*Prosser v. Hardesty,* 101 Mo. 593, 14 S. W. 628; *Fields v. Whitfield,* 101 N. C. 305, 7 S. E. 780.)

"Be distributed" in a will gives a vested fee. (*Williams v. Williams,* 73 Cal. 99, 14 Pac. 394; *In re Creighton,* 12 Neb. 280, 11 N. W. 313; *Robinson v. Fair,* 128 U. S. 53, 9 Sup. Ct. 30, 32 L. ed. 415; *Thomson v. Tracy,* 60 N. Y. 174–180.)

Courts in all cases of doubt construe conditions as subsequent rather than precedent, so that the estate may vest at the earliest possible moment. (1 Dembetz on Land Title, 23–160.)

A grantor cannot destroy his own grant, however much he may modify it or load it with conditions. One having granted an estate in a deed, no separate clause, even in the same deed, can operate to nullify it. (2 Devlin on Deeds, 2d ed., 838a; *Maker v. Lazell,* 83 Me. 562, 23 Am. St. 795, 22 Atl. 474; *Cosby v. Newby,* 30 Ky. Law Rep. 1375, 101 S. W. 306; *Crews v. Glasscock,* 32 Ky. Law Rep. 913, 107 S. W. 237; *Wilkins v. Norman,* 139 N. C. 40, 111 Am. St. 767, 51 S. E. 797.)

The intent of the testator does not always govern the construction of wills. There are rules of law which control their construction. (*Bernstein v. Bramble,* 81 Ark. 480, 99 S. W. 682, 8 L. R. A., N. S., 1028, 11 Ann. Cas. 343; *Ide v. Ide,* 5 Mass. 500; *Jackson v. De Lancey,* 13 Johns. (N. Y.) 538, 552, 7 Am. Dec. 403.)

The estate cannot be construed to be a life estate because there are no words of limitation sufficient to limit it to that kind of a tenure. The proper words to be used in creating a limitation are "while," "as long as," "until" and "during." (*Vanatta v. Brewer,* 32 N. J. Eq. 268, 6 Morr. Min. Rep. 358.)

Where a granting clause conveys in fee simple, a subsequent clause that the land shall revert on the death of one of the grantees is void. (*Palmer v. Cook,* 159 Ill. 300, 50 Am. St. 165, 42 N. E. 796; *Marsh v. Morris,* 133 Ind. 548, 33 N. E. 290.)

One who has no title to land cannot maintain a bill to remove a cloud from the title. (*Coel v. Glos,* 232 Ill. 142, 83 N. E. 529, 15 L. R. A., N. S., 413; *Pulliam v. Cherokee etc. Co.,* 52 Cal. 605; *Cox v. Bird,* 65 Ind. 277.)

The court must, in order to give integrity to its orders, follow the statute strictly. (*Alcorn v. Buschke,* 133 Cal. 655, 66 Pac. 15; *Letellier's Estate,* 74 Cal. 311, 15 Pac. 847; *Alcorn v. Brandeman,* 145 Cal. 62, 78 Pac. 343; *Baker v. Wood,* 42 Ala. 664; *Pearson v. Pearson,* 46 Cal. 611; *In re Austin's Estate,* 50 Hun. 604, 2 N. Y. Supp. 875; *Grafenreid v. Kundert,* 23 Ill. App. 440.)

AILSHIE, J.—This action was commenced for the purpose of determining an adverse claim to certain real property. It is alleged in the complaint that James Wilson died in Ada county in March, 1899, leaving a last will and testament which was thereafter duly admitted to probate; that William E. Wilson, Charlotta Calhoun, Emma Linder, Lizzie Everett, and Jesse Wilson, all of whom are sons and daughters of James Wilson, and Myrtle Goble, a grand-daughter, are named in the will as devisees and legatees of the testator; that, among other things, the will provided as follows: "That my son Jesse shall have the home place. [Then follows description.] . . . . But should my son Jesse die without any wife or children, the property herein conveyed to him shall be equally divided between my other four children, or their heirs, share and share alike." During the course of administration, application was made for a decree of partial distribution, and the petition was granted and the decree was entered by virtue of which the real estate described in the complaint herein and involved in this litigation was distributed to the parties entitled thereto in accordance with the terms and conditions of the will and in the identical language of the will itself. It is further alleged that one of the devisees, Lizzie Everett, has conveyed all her interest in the property described to Norman Gratz, and that the plaintiffs are the owners of and entitled to an undivided three-fourths interest in the property in controversy, subject only to the conditions of the will, namely, that if Jesse Wilson should die without leaving a wife or child, the property mentioned and described shall be equally divided between the other devisees named in the will.

It is further alleged that for the purpose of preventing William E. Wilson, Charlotta Calhoun, and Lizzie Everett, and their heirs and successors in interest, from holding or acquiring an undivided three-fourths interest in the property described in the complaint in the event of the death of Jesse Wilson without leaving surviving him a wife or child, the defendants, Anthony V. Linder and Emma Linder, have secured a pretended deed from the said Jesse Wilson purporting to convey a fee simple title to the land described in the complaint to themselves; and that for the further purpose of defeating the title of William E. Wilson, Charlotta Calhoun and Lizzie Everett in the land described and in collusion with Jesse Wilson, the defendants have permitted the land to be sold for delinquent taxes, and thereby secured a pretended tax title by virtue of which they claim a fee simple title to the whole tract of land.

It is also alleged that for the further purpose and intention of defeating the title of the devisees and plaintiffs herein, defendants have made and executed a pretended mortgage on the land described in the sum of $10,000 in favor of the defendant Robert Noble.

The prayer of the complaint is that the defendants be required to come in and set up their claim and interest in the property, and that the title to the property be adjudicated and decreed, and that it be adjudged and decreed that the plaintiffs have a contingent interest in the property, the vesting of title to which is dependent upon Jesse Wilson dying without leaving surviving him a wife or child. Defendants demurred to the complaint on the ground that it did not state a cause of action. The demurrer was sustained, and this is an appeal from the judgment.

The first question presenting itself to our consideration is the contention made by the respondent that the plaintiffs do not show such an interest as will entitle them to maintain the action. Now, it must be conceded that if the complaint shows any interest in the plaintiffs whatever to the land described it is only a contingent remainder. (Sec. 3075, Rev. Codes.) Their expectancy in this property is subject to

be defeated upon the death of Jesse Wilson leaving surviving· him either a wife or child, or, to put the question another way, the interest of the plaintiffs can only vest upon the death of Jesse Wilson without leaving surviving him a wife or child. Under the provisions of our statute (sec. 4538, Rev. Codes),. "An action may be brought by any person against another who· claims an estate or interest in real property adverse to him,. for the purpose of determining such adverse claim."

In *Coleman v. Jaggers,* 12 Ida. 125, 118 Am. St. 207, 85 Pac. 894, this court said: "The provisions of said section 4538 of" the Revised Statutes above quoted are very broad, and under· them any person, whether in possession or out of the possession, whether holding the legal title or equitable title or what, not, may bring his action against another who claims an estate· in real property adverse to him, and may in such action have· the adverse claim determined and settled. . . . . The provisions of sec. 4538 of the Revised Statutes, and the decisions· of this court in *Shields v. Johnson,* 10 Ida. 476, 79 Pac. 393,. 3 Ann. Cas. 245, *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784; *Fry v. Summers,* 4 Ida. 424, 39 Pac. 1118, settle this contention, for under them we think every estate or interest known to the law in real property, whether legal or equitable, may·be· determined in an action of this kind."

It follows from the authority of the foregoing cases that if· the plaintiffs have any interest in this property, either contingent or expectant, they may maintain an action to determine any adverse claim or interest thereto. (*German-American Savings Bank v. Gollmer,* 155 Cal. 683, 102 Pac. 932.)

The next question to be determined is whether under the· will of James Wilson, Jesse Wilson took a fee simple title to this property or a lesser estate therein. It is conceded that at common law, under what is generally known as the "Rule in Shelley's Case," the language of this will passes a fee· simple title in the property to the devisee. It is contended, however, by counsel for appellant that the "Rule in Shelley's. Case" has been abrogated by sec. 3076 of the Rev. Codes. of this state. That section provides as follows:

"When a remainder is limited to the heirs, or heirs of the body, of a person to whom a life estate in the same property is given, the persons who, on the termination of the life estate, are the successors or heirs of the body of the owner for life, are entitled to take by virtue of the remainder, so limited to them, and not as mere successors of the owner for life."

The foregoing section of our statute is identical with sec. 779 of the Civil Code of California, and was evidently copied from the California statute. In *Barnett v. Barnett*, 104 Cal. 298, 37 Pac. 1049, the supreme court of California had occasion to construe the provisions of sec. 779 of their Civil Code, and among other things said:

"The effect of this section is to abrogate the rule in Shelley's case, and, with other sections in the Civil Code, to furnish the rules by which to determine the estate or interest in the lands which the plaintiff took by virtue of the grant. (Civ. Code, sec. 4.)   Sec. 1105 declares that 'a fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended'; and, if it does appear from the grant that a lesser estate was intended, no such presumption exists.   A grant is to be interpreted in the same manner as any other contract (sec. 1066), so as to give effect to the intention of the parties, if that intention can be ascertained (sec. 1636); and, for the purpose of ascertaining that intention, 'the whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' . . . . By sec. 779, Civ. Code, the term 'heirs' is changed from a word of limitation to one of purchase, and becomes a specific designation of a class which will have the right to the property upon the termination of the life estate. Upon that event they take the property, not by descent or as successors of the plaintiff, but by virtue of the remainder which was created for them at the execution of the deed to him.   This remainder, although not capable of immediate enjoyment (Id., sec. 690), and therefore denominated a 'future interest,' is, nevertheless, an estate in the property

capable of being transferred in the same manner as a present
interest. (Id., sec. 699.)''

Whether the construction of the provisions of sec. 3076,
Rev. Codes, will have any bearing on the ultimate conclusion
to be reached in this case will depend on the interpretation
given to the language of the testator as used in the will here
under consideration.

We now turn our attention to the consideration of the will
itself for the purpose of ascertaining the intent of the testator.
We approach this inquiry in the light of the general rule
for the construction of wills, namely: That the intent of the
testator as gathered from the language he has employed in
the will is the cardinal rule to be applied in the construction
of the will, and this intent is to be ascertained from a full
view of everything within ''the four corners of the instru-
ment.'' (*Whiting v. Whiting,* 42 Minn. 548, 44 N. W. 1030;
*Holt v. Wilson* (Kan.), 108 Pac. 87; *Reeves v. School Dist.
No. 59,* 24 Wash. 282, 64 Pac. 752.) In the outset, however,
respondent insists that where a will contains a clearly ex-
pressed intention on the part of the testator to confer an
absolute and fee simple estate on the devisee, such intent can-
not yield to any subsequent limitation although contained in
the same instrument. That contention is certainly true where
the testator gives in clear and unambiguous terms an absolute
and fee simple estate, and the subsequent limitation or reser-
vation is inconsistent with the estate devised. In such case
the subsequent limitation must give way to the fee. (*Bern-
stein v. Bramble,* 81 Ark. 480, 99 S. W. 682, 8 L. R. A., N. S.,
1028, 11 Ann. Cas. 343; *Ide v. Ide,* 5 Mass. 500; *Jackson v.
De Lancy,* 13 Johns. (N. Y.) 538, 7 Am. Dec. 403.)

We think the rule is correctly stated by the text-writers
and many authorities as follows: ''Where property is given
in clear language sufficient to convey an absolute fee, the
interest thus given shall not be taken away, cut down or
diminished by any subsequent, vague and general expres-
sions'' (Underhill on Wills, sec. 689); or as said by Redfield,
''A clearly expressed intention in one portion of the will is
not to yield to a doubtful construction in any other portion

of the instrument.'' (1 Redfield on Wills, chap. 9, sec. 30c; *Holt v. Wilson* (Kan.), 108 Pac. 87; *McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965; *Lohmuller v. Mosher,* 74 Kan. 751, 87 Pac. 1140, 11 Ann. Cas. 469; *Byrnes v. Stillwell,* 103 N. Y. 453, 57 Am. Rep. 760; 9 N. E. 241; *Washbon v. Cope,* 144 N. Y. 287, 39 N. E. 388.) In other words, the rule adopted by many courts and as we believe the one more reasonable, when stated conversely, is substantially as follows: ''When the limitation is clear and unmistakable, it is to be taken and considered in determining the intent of the testator, and the whole instrument must be considered together in determining the character and extent of the estate given.''

In the light of these principles and rules of law, we turn to the provision of the will now under consideration to ascertain the intent and purpose of the testator as therein expressed. He first says: ''My son Jesse shall have the home place.'' This is immediately followed by the limitation, ''But should my son Jesse die without any wife or children, the property herein conveyed to him shall be equally divided between my other four children,'' etc. It is contended that the words ''shall have'' pass an unqualified fee simple estate. It may be conceded for the purposes of this case that these words, standing alone, unlimited and unqualified, are sufficient to pass an absolute estate. (*Lessee of Fairclaim v. Guthrie,* 1 Call (Va.), 7; *Chapman v. Turner,* 1 Call (Va.), 280, 1 Am. Dec. 514; *Franklin v. State,* 52 Ala. 414; *George v. Green,* 13 N. H. 521.) These words, however, immediately followed by the modification must be considered in view and in light of the words thus modifying and limiting the estate given. A testator can no more readily than anyone else express his full purpose and intent in one sentence—he cannot devise and limit an estate in one and the same word, phrase, clause or sentence. He must express his intention in words, and each person adopts his own peculiar methods of expressing himself. The duty of the law is to discover his intent as conveyed by the language employed. Had the words ''without any wife or children'' been omitted from this sentence employed in this will, then it would have been the clear intent of the testator

to refer to the death of Jesse Wilson as taking place prior to the death of the ancestor, because to attempt to give it any different construction would be to render the language meaningless. That Jesse Wilson would die some time, either before or after the death of the testator, was self-evident and axiomatic, but that he would die prior to the death of the testator was uncertain and problematic. Since, however, the testator saw fit to insert the words "without any wife or children," and thereby designate the condition and circumstance under which the death of Jesse Wilson should vest a fee simple estate, and since that condition may as readily occur subsequent to the death of the testator as prior, *and may also fail to ever occur,* it would therefore be robbing the limitation of the greater portion of its meaning and scope of operation to *limit it to the period of time prior to the death of the testator.* There can be no room for reasonable doubt but that the testator here meant to give his son Jesse Wilson a limited or qualified fee in the home place subject to divestiture on the death of Jesse Wilson without leaving surviving him a wife or child. It is therefore clear to us that the plaintiffs have a contingent remainder in this estate which may be defeated upon the happening of the contingency named in the will which was intended by the testator to vest the absolute fee to the estate. (Secs. 3062, 3072 and 3075, Rev. Codes; *Jewell v. Pierce,* 120 Cal. 79, 52 Pac. 132; *First Universalist Society v. Boland,* 155 Mass. 171, 29 N. E. 524, 15 L. R. A. 231.) Upon the death of the devisee leaving surviving him a wife or child, the limitation or qualification will instantly be removed and the fee will be left absolute. If, on the other hand, he die without leaving surviving him a wife or child, this base or qualified fee will be instantly terminated and the unqualified fee will be vested by the terms of the will in the other brothers and sisters therein named.

It is also contended by respondent that the decree of distribution made by the probate court in this matter under secs. 5621 and 5624, Rev. Codes, is void for the reason that no bond was required. Whatever the error might be in not requiring a bond in case of a partial distribution under secs.

5621 and 5624, Rev. Codes, it can make no difference to respondents in this case, for the reason that the language of the order is in identically the same words as the will, and they and their grantor must rest any claim they have to this real estate on either the provision of the will or the decree. No objection to the failure to give bond is being made by either a creditor or the executor or administrator, and respondents do not claim to be creditors but are claiming the estate through the medium of the will.

The contention over this case in this court has revolved about the right of appellants to maintain their action and the construction of the will under which the parties claim their respective interests to this property. No point has been made and no discussion has been had as to the sufficiency or insufficiency of this complaint to charge fraud, collusion or conspiracy between the respondents and the devisee, Jesse Wilson, in order to have this property sold at tax sale and thereby procure a tax title to the property for the purpose of defeating the expectancy of the appellants. We therefore express no opinion whatever with reference to the sufficiency of the allegations in this respect.

For the reasons hereinbefore given, the judgment in this case must be *reversed,* and it is so ordered, and the cause is hereby remanded. Costs awarded to appellants.

Sullivan, C. J., concurs.